**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Mitchell Rivers, #244799<br><br>Petitioner,<br>v.<br><br>Shane Jackson, Warden<br><br>Respondent. | C/A No. 6:25-cv-7862-SAL-KFM<br><br>**RETURN AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Petitioner is a state inmate currently serving an active sentence in the South Carolina Department of Corrections at the Lee Correctional Institution. On August 14, 2025, the Honorable Kevin F. McDonald, United States Magistrate Judge, issued an order directing Respondent to file a return or other response to the *pro se* Petition for Writ of Habeas Corpus filed by Petitioner (ECF #10, #10-1). Respondent now makes his return and moves for summary judgment. Respondent is entitled to judgment in his favor because the state court records submitted with this return and memorandum show that neither of Petitioner's two grounds can support relief. Ground One is an ineffective assistance of counsel claim that was properly exhausted and ripe for deferential review, however, the state court adjudication reflects a reasonable application of federal law, fully supported by the facts of record. Ground Two is defaulted and not available for review. Consequently, Respondent is entitled to summary judgment as a matter of law.

In making the return, and in support of the motion for summary judgment, Respondent would respectfully show the Court:

**PROCEDURAL HISTORY**

Petitioner was indicted by a Chesterfield County grand jury in October 2010 for the charge of homicide by child abuse relating to the death of his adopted four-month-old child on August 7, 2005. (Attachment 1, PCR App. 558–559).[1] On February 8, 2011, he proceeded to a jury trial before the Honorable Paul M. Burch. (PCR App. 1). Assistant Public Defenders Matthew Swilley and Tiffany Gibson represented Petitioner while the State was represented by Assistant Solicitors Suzanne Mayes and Adam Foard. (PCR App. 1). After a three-day trial, the jury found Petitioner guilty as indicted. (PCR App. 373). The trial court sentenced Petitioner to a term of life imprisonment. (PCR App. 382). Petitioner timely appealed.

On August 15, 2012, Appellate Defender Breen Richard Stevens filed an *Anders* brief in the South Carolina Court of Appeals on behalf of Petitioner and argued that the trial court erred in admitting evidence of prior physical abuse to the victim and in failing to grant a directed verdict for Petitioner. (PCR App. 393–412). Appellate counsel also filed a petition to be relieved as counsel for Petitioner in the appeal based on his opinion that the appeal lacked merit. (PCR App. 413). The South Carolina Court of Appeals denied the petition to be relieved as counsel and directed the parties to brief the issue of whether the trial court erred in admitting evidence of prior child abuse. (PCR App. 417). The additional briefing followed. (PCR App. 419-456).

On February 11, 2015, in a published opinion, the South Carolina Court of Appeals affirmed Petitioner's conviction, holding that the issue was unpreserved for review. (PCR App. 457–461; *see also State v. Rivers*, 411 S.C. 551, 769 S.E.2d 263 (Ct. App. 2015)). Petitioner did not seek further direct review, and the remittitur was issued on February 27, 2015, thus ending

---

1 "PCR App." refers to the appendix complied by Petitioner's PCR counsel and filed as part of his PCR appeal.

appellate jurisdiction. (Attachment 2; *see also Wise v. S.C. Dep't of Corr.,* 642 S.E.2d 551, 551 (S.C. 2007) ("When the remittitur has been properly sent, the appellate court no longer has jurisdiction over the matter and no motion can be heard thereafter.")).

Shortly thereafter, on Februa ry 27, 2015, Petitioner filed an application for post-conviction relief in Chesterfield County, alleging that he was being held in custody unlawfully for the following reasons:

> a. Defense Counsel's failure to object to the Section (A)(2) charge to jury as lesser included offense of section (A)(1) constituted deficient performance.
>
> b. Defense Counsel's failure to object to the erroneous supplemental jury instructions that enlarged applicant's indictment constituted deficient performance.
>
> c. Appellate Counsel's failure to raise the directed verdict issue on appeal constituted deficient performance.
>
> d. Defense counsel's failure to preserve for appellate review the issue of admissibility of evidence of collateral injuries constituted deficient performance.

(App. 465).

On December 16, 2016, the State made its Return. (App. 473–479). Lance S. Boozer, Esq., was appointed to represent Petition in the action. On May 31, 2017, PCR counsel filed an amendment to the application, alleging that "[c]ounsel failed to object to testimony and argue at trial [that] child's prior injuries were not connected to Applicant." (App. 471–472).

On July 17, 2017, an evidentiary hearing was convened before the Honorable Roger E. Henderson at the Dillon County Courthouse. Petitioner was represented with appointed counsel, Mr. Boozer. The State was represented by Assistant Attorney General Johnny James, Jr. (App. 480, 485). Following the close of testimony and brief arguments, the Court directed the parties to submit memoranda within fourteen days. (App. 531–537). Thereafter, the State filed a written

memorandum and Petitioner responded by email. (App. 539–546). On October 18, 2017, Judge Henderson issued an order of dismissal denying Petitioner post-conviction relief. (App. 547–557). Petitioner appealed the denial of relief.

On June 18, 2018, Appellate Defender Taylor D. Gilliam, PCR appellate counsel for Petitioner, filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina presenting the following issue:

> Did the PCR court err in denying Petitioner relief, where trial counsel failed to offer a contemporaneous objection, on multiple occasions, to prior injuries suffered by a child, in a homicide by child abuse case, where the evidence of prior injuries was unrelated to Petitioner, and where the Court of Appeals found the issue unpreserved?

(Attachment 3).

The State filed its Return to the Petition on November 5, 2018. (Attachment 4). On November 16, 2018, pursuant to Rule 243(l), SCACR, the South Carolina Supreme Court transferred the matter to the South Carolina Court of Appeals. (Attachment 5). The South Carolina Court of Appeals granted certiorari on October 28, 2020, and ordered additional briefing. (Attachment 6).

Petitioner filed his brief on March 5, 2021. (Attachment 7). The State filed its brief on April 30, 2021. (Attachment 8). Petitioner filed a reply on May 11, 2021. (Attachment 9). The Court of Appeals heard argument in the matter on December 5, 2022.

In an unpublished opinion issued in July 2023, the South Carolina Court of Appeals reversed the circuit court and granted relief, holding that Petitioner's trial counsel was ineffective by failing to object to evidence of the child's collateral injuries. (Attachment 10; *see also Rivers v. State*, Op. No. 2023-UP-262 (S.C. Ct. App. filed July 12, 2023)). On August 10, 2023, the State filed a timely Petition for Rehearing and Suggestion for Rehearing *en banc*. (Attachment 11). On

October 12, 2023, the South Carolina Court of Appeals denied the State's petition. (Attachment 12).

On November 13, 2023, the State filed a Petition for Writ of Certiorari with the South Carolina Supreme Court. (Attachment 13). Petitioner filed his return on January 2, 2024, (Attachment 14). On September 24, 2024, the South Carolina Supreme Court granted certiorari and directed the parties submit additional briefing, which followed. (Attachments 15, 16, 17). The state court heard oral argument on April 2, 2025, after which the case was submitted for final consideration.

On May 28, 2025, the South Carolina Supreme Court issued an opinion reversing the South Carolina Court of Appeals, holding that Petitioner had not demonstrated a reasonable likelihood that excluding the collateral injury evidence would have changed the jury's verdict, therefore failing to satisfy *Strickland's* prejudice prong. (Attachment 18; *see also Rivers v. State*, 446 S.C. 1, 916 S.E.2d 335 (2025). Petitioner did not move for rehearing, and the remittitur ending appellate jurisdiction was issued on June 13, 2025. (Attachment 17; *see also Wise, supra*).

Petitioner has now filed a *pro se* Petition for Writ of Habeas Corpus on or about July 14, 2025.[2] (ECF #1; *see also Houston v. Lack*, 487 U.S. 266, 270–71 (1988) (petition considered filed

[2] The exact date is difficult to discern. Petitioner's statement of mailing reflects delivery was July 11, 2025, (ECF No. 10-1 at 15), and, though difficult to read, the attached envelope appears to reflect the petition was received by prison officials on July 14, 2025, (ECF No. 1-1 at 2). In any event however, whether the filing date is the 11th or the 14th is irrelevant since the filing is well within the one-year statute of limitations. Petitioner filed his PCR action within one day of finality in the direct appeal (allowing 15 days after the February 11, 2015 opinion, *i.e.,* the time in which Petitioner could have, though he didn't, sought rehearing, which is also a condition precedent for seek review from the state supreme court, *see* Rule 221(a) and 242(d)(1), SCACR). Further, Petitioner filed this action within two months of the May 28, 2025 final opinion in the PCR appeal. Thus, Respondent does not raise a statute of limitations defense here.

when "delivered . . . to prison authorities for forwarding to the District Court."). This Return to the Petition follows.

**ATTACHMENTS**

Attached and incorporated by reference are the following documents which establish the extent of the state court record pertaining to this action:

1. PCR Appeal Appendix Vols. I & II:
   a. Trial Transcript (Feb. 8–10, 15, 2011)
   b. Supplemental Record on Appeal
   c. Anders Brief of Appellant
   d. Supreme Court Order (Sept. 5, 2013)
   e. Brief of Appellant
   f. Brief of Respondent
   g. State v. Rivers, Op. No. 5296 (S.C. Ct. App. filed Feb. 11, 2015)
   h. Application for Post-Conviction Relief
   i. Amendment to PCR Application
   j. Return to PCR Application
   k. PCR Hearing Transcript (July 17, 2017)
   l. Memorandum Opposing PCR Relief
   m. Email Response to Memorandum Opposing PCR Relief
   n. Order of Dismissal
   o. Indictment
2. Direct Appeal Remittitur (February 27, 2015);
3. Petition for Writ of Certiorari (June 18, 2018);
4. State's Return to Petition for Writ of Certiorari (Nov. 5, 2018);
5. Supreme Court Order Transferring Matter to Court of Appeals (Nov. 16, 2018);
6. Court of Appeals Order Granting Certiorari (Oct. 28, 2020);
7. Brief of Petitioner (Mar. 5, 2021);
8. Brief of Respondent (Apr. 30, 2021);
9. Reply Brief of Petitioner (May 11, 2021);
10. *Rivers v. State*, Op. No. 2023-UP-262 (S.C. Ct. App. filed July 12, 2023);
11. State's Petition for Rehearing and Suggestion for Rehearing *en banc* (Aug. 10, 2023);
12. Court of Appeals Order Denying Petition for Rehearing (Oct. 12, 2023);
13. State's Petition for Writ of Certiorari (Nov. 13, 2023);
14. Return to State's Petition for Writ of Certiorari (Jan. 2, 2024);
15. Supreme Court Order Granting Certiorari (Sept. 24, 2024);
16. State's Brief of Petitioner (Oct. 29, 2024);
17. Petitioner's Brief of Respondent (Dec. 16, 2024);

18. *Rivers v. State*, Op. No. 28285 (S.C. Sup. Ct. filed May 28, 2025);
19. PCR Remittitur (June 13, 2025).

## RESPONDENT'S STATEMENT OF FACTS

*The Crime*

For context in considering the grounds to follow, Respondent relies on the South Carolina Supreme Court's summary of the facts from the PCR appeal:

> In 2005, Rivers resided with his wife, several family members, and Victim. On the morning of August 7, 2005, Victim died as a result of asphyxiation. On September 19, 2005, after giving several differing statements to law enforcement officers, Rivers was arrested and charged with HCA.
>
> In 2010, before Rivers' trial, the State moved for a preliminary ruling as to the admissibility of evidence of Victim's collateral injuries—the injuries found during Victim's autopsy that were not directly related to Victim's death. Those injuries included contusions of varying age on Victim's scalp, healed rib fractures with old contusions, facial petechiae consistent with asphyxiation, and various external abrasions. In its Motion in Support of Evidence of Abuse, the State argued that "the constellation of injuries is evidence of child abuse and neglect, directly relevant pursuant to SCRE Rule 404(b) to counter the argument of 'mistake or accident.' " The State also argued that this evidence directly countered Rivers' claim that the asphyxiation was accidental, serving as Battered Child Syndrome evidence or evidence from the "same general timeframe as the fatal injury." Rivers, however, moved to exclude the evidence based on lack of a connection between the injuries and Victim's asphyxiation, and no indication that the collateral injuries "have been attributed to the actions of the Defendant by any source at this time." The trial court later denied Rivers' motion, noting that "[t]hese child cases are getting a little different treatment than what we normally are use[d] to involving adult cases and other type of criminal cases." The trial court also noted that Trial Counsel was "protected on the record on that."
>
> At trial, the State called witnesses to explain how Rivers came to care for Victim, the events of the morning of Victim's death, and Victim's collateral injuries. The State first called Dena Owens to explain that Victim was Rivers' wife's nephew but was placed with Rivers and his wife by DSS because Rivers' wife's sister was not fit to care for Victim.

The State also called Wayne Jordan, an investigator with Chesterfield Sheriff's Office, and Julia Duff, a sergeant with Florence Police Department, to testify about Rivers' various statements to police concerning the events on the morning of Victim's death. Jordan and Duff testified that Rivers gave three different stories about the events of August 7, 2005. First, Jordan noted that in his interview with Rivers just after Victim's death, Rivers stated that he shared a bed with Victim on August 7 and woke up with Victim at 6:00 a.m. to change and feed Victim before doing yard work. Rivers stated that after he changed and fed Victim, he placed Victim in a playpen and went outside. Rivers stated that an hour later, his wife came outside to tell him Victim was not breathing. Rivers then went inside to perform CPR on Victim while his wife called 911. Jordan told the jury that the bedroom had been cleaned before police arrived at the scene, making locating the pillow from Victim's playpen impossible.

Duff testified as to the second story Rivers told investigators. Duff stated that she interrogated Rivers after he learned that Victim's autopsy revealed that Victim had an empty stomach on the morning of Victim's death. Duff stated that when faced with this new information, Rivers "confessed that he had done it." Duff summarized Rivers' statements during the interview, noting that Rivers woke to Victim not breathing. Rivers then performed CPR on Victim before placing Victim in his playpen while Victim was still not breathing. Rivers then went outside until his wife retrieved him an hour later to tell him Victim was not breathing. This summary was corroborated by Rick Charles, a senior special agent with SLED, who was also present for Rivers' second statement.

Jordan also testified as to Rivers' final statement to police. In that statement, Rivers said that Victim was not breathing when Rivers woke up at 6:00 a.m.; Rivers performed CPR on Victim until Victim started wheezing and regained color; Rivers then went outside to do yard work; and Rivers' wife got Rivers from the yard when she found Victim not breathing an hour later. After giving this statement, Rivers was arrested and charged with HCA.

Additionally, the State called six witnesses who discussed Victim's collateral injuries. The State called Ron Martin, the paramedic who responded to Rivers' home on the morning of Victim's death. Martin testified that Rivers told him Victim had bronchitis in the weeks leading up to Victim's death, causing Victim to have a three-day hospital stay. Martin then identified several photographs taken after Victim's death. Martin described bruising "to the back-occipital

region of [Victim's] head ... which [was] consistent with a basilar skull fracture" and "cut [and] slash lacerations ... in the healing stage ... on [Victim's] back." Martin also explained Victim had bruising around his ear and "petechial hemorrhage of eyes" and that Victim could not have sustained these injuries while receiving medical care in the ambulance.

The State next called Dr. Janice Ross, an expert in forensic pathology, who testified about Victim's collateral injuries and cause of death. Dr. Ross explained she performed the autopsy on Victim and concluded the manner of death was homicide by asphyxiation. Dr. Ross stated she also discovered "some bruises and some abrasions" in the area of Victim's scalp and "several rib fractures that were healing." Dr. Ross testified the bruises, abrasions, and fractures were odd because Victim was only four months old and could not "necessarily crawl around and fall off things and cause bruises and abrasions to himself." Dr. Ross identified the injuries she observed on Victim using a diagram of an infant; she explained she "could see a lot of contusions [and] bruises on the back of the head." According to Dr. Ross, Victim had "older bruises," which indicated "injuries to the scalp [at] different ages." Dr. Ross testified the contusions were consistent with blunt force trauma from "a knuckle or fist." Dr. Ross also identified "old rib fractures" that were "probably at least seven to fourteen days old."

The State then called Dr. Clay Nichols, an expert in forensic pathology. Dr. Nichols confirmed he reviewed the autopsy report, photographs, and underlying data from Dr. Ross. Dr. Nichols stated he "agree[d] with Doctor Ross that [Victim] died as a result of asphyxiation due to smothering." Dr. Nichols explained it was his opinion that Victim "was subjected to physical abuse resulting in multiple rib fractures as well as multiple abrasions and contusions on his body." According to Dr. Nichols, "the timing of the injuries indicates that these were not the same time, but he was subjected to multiple incidents of blunt trauma." Dr. Nichols explained Victim had a chest study done two months before he died in which there were "no rib fractures," but then "two months later [Victim had] healing rib fractures." Dr. Nichols stated Victim had been "physically abused to the point of having multiple rib fractures" and that Victim's contusions "would be non-accidental." Accordingly, Dr. Nichols testified that this "is a classic case of Battered Child Syndrome." On cross-examination, Dr. Nichols acknowledged he did not have evidence that Rivers inflicted the prior abuse. Also, during Dr. Nichols' testimony, Trial Counsel objected on the grounds that the testimony was cumulative and speculative. However, Trial Counsel did not raise his pretrial objection to the

> evidence based on connection. The State also questioned Jordan, Duff, and Charles about Victim's collateral injuries.
>
> Rivers testified in his defense and stated Victim had difficulty breathing in the weeks before his death. Rivers explained he and his wife took Victim to the doctor, and Victim was diagnosed with bronchitis. According to Rivers, Victim's breathing issues persisted, resulting a three-day hospital stay for Victim. Rivers then reiterated the timeline of events he provided in his final statement to Jordan. On cross-examination, the State asked Rivers about each of the bruises and contusions Victim had on his body. Rivers stated he did not know how Victim sustained the injuries. Rivers also said he had "never [been] alone with [Victim]" because of his work schedule.
>
> Rivers presented testimony from his father, nephew, and two siblings. Each witness testified they had never seen Rivers mistreat or harm Victim. At the trial's conclusion, the jury found Rivers guilty of HCA, and the trial court sentenced him to life imprisonment.

*Rivers*, 446 S.C. at 5–9, 916 S.E.2d at 338–40.

## GROUNDS FOR RELIEF

Petitioner presently raises the following grounds for relief, *verbatim*:

> **Ground One:** "Ineffective Assistance of Counsel- Failure to Object"
>
> "The Court of Appeals noted that the trial court nver [sic] ruled on the issue of collateral injuries. Notably the Court of Appeals found the issue unpreserved and remarked the state issued its strongest argument the isue [sic] was unpreserved. Counsel presented no reason at pcr hearing as to why he failed to preserve and or object to the ruling. The State Appellate Court deemed this issue was unpreserved fro [sic] appellate review, because counsel failed to get court to rule upon issue."
>
> **Ground Two:** "Did trial court err in admitting evidence of collateral injuries indicative of prior child abuse."
>
> "Additionally, the state maintained the evidence of abuse and negeglect [sic] established 'motive' pursuant to Rule 404(b) SCRE/FRE. In its motion, the stae [sic] pointed out that evidence of head and scalp injuries, in addition to external abrasions were sustained within general timeframe of the [sic] fatal injury. The State Appellate Court, after filing of petition by counmsel [sic] to be

> relived [sic], the court ordered teh [sic] parties to fully brief question above in ground two of this habeas petition."

**EXHAUSTION OF STATE REMEDIES**

District courts reviewing state criminal matters under 28 U.S.C. § 2254 "generally may entertain a prisoner's habeas petition raising federal claims only if he has 'exhausted the remedies available in the courts of the State.'" *Moore v. Stirling*, 952 F.3d 174, 181 (4th Cir.), *cert. denied,* 141 S. Ct. 680 (2020) (quoting 28 U.S.C. § 2254(b)(1)(A)). Petitioner generally meets the condition-precedent exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A) in that he has no ordinary state remedies still available.[3]

South Carolina provides two basis remedies after conviction—direct appeal and post-conviction relief. *See generally* S.C. Code Ann. § 14-3-330 (providing for appellate jurisdiction for correction of errors of law); Rule 201 (a), SCACR (recognizing right to appeal from final judgment); S.C. Code Ann. § 17-27-20 (setting out cognizable claims in PCR and providing, for collateral actions, that PCR "comprehends and takes the place of all other common law, statutory or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used *exclusively* in place of them") (emphasis added). *See also Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 790 (D.S.C. 2010), *appeal dismissed*, 412 F. App'x. 633 (4th Cir. 2011) ("To exhaust a claim in state court, a person in custody has two primary means of attacking his conviction: filing a direct appeal and/or filing an application for relief under the South Carolina Post Conviction Procedure Act"). Petitioner has neither of these remedies still available to him.

---

[3] This section deals with general exhaustion only (*i.e.,* the availability of state court remedies) and does not address default. Procedural default is addressed separately below.

*First*, Petitioner timely sought a direct appeal, though, instead of a merits review, his conviction and sentence were affirmed on lack of preservation of the issue for appellate review. (Attachment 1, PCR App. 457–461; *see also State v. Rivers*, 411 S.C. 551, 769 S.E.2d 263 (Ct. App. 2015)). Petitioner did not seek further direct appeal review, and the remittitur issued on February 27, 2015, ending appellate jurisdiction. (Attachment 2; *see also Wise, supra*).[4] Petitioner has no further direct appeal remedies available to him.

*Second*, Petitioner timely filed a PCR application, and, having been denied relief, appealed. Though the South Carolina Court of Appeals initially reversed the PCR court, its decision was reversed after review by the Supreme Court of South Carolina. (Attachment 18; *see also Rivers v. State*, 446 S.C. 1, 916 S.E.2d 335 (2025)). Therefore, Petitioner exhausted his ordinarily available PCR remedies. *See Wade v. State*, 348 S.C. 255, 264, 559 S.E.2d 843, 847 (2002) ("An individual under PCR effectively is granted one chance to argue for relief and must do so within a year of his final appeal."); *Gibson v. State*, 329 S.C. 37, 42, 495 S.E.2d 426, 428 (1998) (exhaustion of state PCR remedies requires "filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review."). Petitioner has no standard PCR remedies available to him on these matters.

Therefore, this petition should not be dismissed in order to pursue available state remedies, as there are none.

---

[4] The fact that Petitioner did not seek further direct appeal review does not affect exhaustion of his direct appeal remedy for purposes of this action. *See In re Exhaustion of State Remedies in Crim. & Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990) ("in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error"). At any rate, once the remittitur issues, appellate jurisdiction is no longer available and no motion or other filing can be made in the appellate action. *See Wise, supra.*

**SUMMARY JUDGMENT**

Summary judgment should be granted when a party cannot prevail. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). In reviewing a summary judgment motion, the Court must "determine whether there is a genuine issue for trial." *Id.* at 249. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). An issue is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Anderson*, 477 U.S. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made such a demonstration, the non-moving party must show a basis to find that "there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Notably, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. And, after being granted the opportunity to respond, the non-moving party fails to do so or fails to "properly" address the "assertion of fact" in question, the court may grant summary judgment on the showing by the moving party. Fed. R. Civ. P. 56(e)

In federal habeas, the facts at issue are generally those facts that have been presented to the state courts. The Supreme Court has clearly held that "review under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011). Likewise, "under [28 U.S.C.] § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record [for procedurally defaulted claims] based on ineffective assistance of state postconviction counsel." *Shinn v. Martinez Ramirez*, 596 U.S. 366, 382 (2022). *See also id.,* at 371 ("The question presented is whether the equitable rule announced in [*Martinez v. Ryan*, 566 U.S. 1 (2011),] permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record. We conclude that it does not"); § 2254(e)(2) (hearing not available unless petitioner shows a new rule of law or that the factual basis for the claim at issue was unavailable *and* the facts sought to be proved would "establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts."). Thus, the state court record controls.

Here, the state court record before the court conclusively shows that Petitioner is not entitled to any relief for all the reasons discussed below.

## DISCUSSION

AEDPA provides that a claim adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of" clearly established federal law as decided by the United States Supreme Court, or the decision "was based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d). *See also Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000); *Owens v. Stirling,* 967 F.3d 396, 410–11 (4th Cir. 2020).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "The question" then "is whether a fairminded jurist could take a different view." *Shinn v. Kayer*, 592 U.S. 111, 121 (2020).

Simply, "[o]ur federal system entrusts state courts with the administration of their own criminal justice systems" therefore, "a federal court may grant habeas relief to a state prisoner only in 'exceptional circumstances.' " *Moore v. Stirling*, 952 F.3d 174, 181 (4th Cir.), *cert. denied*, 141 S.Ct. 680 (2020) (quoting *Richardson v. Branker*, 668 F.3d 128, 138 (4th Cir. 2012)). In essence, "[i]n enacting AEPDA, Congress thus recognized that federal courts 'owe state tribunals significant deference' with respect to their determination that a state prisoner isn't entitled to habeas relief." *Owens*, 967 F.3d at 411 (quoting *Bennett v. Stirling*, 842 F.3d 319, 323 (4th Cir. 2016)). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter* at 102-103.

*Procedural Default*

For the above standard to apply, however, a federal habeas petitioner first must exhaust his federal law claims by presenting them to the highest state court with jurisdiction to decide them. *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Moreover, the petitioner must present the issue in compliance with state procedural rules so that the issue may be reviewed on the merits.

*Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). If a petitioner fails to present a ground at all, that is also a default barring review on the merits. *Coleman*, 501 U.S. at 735 n. 1. A petitioner may only overcome the default by showing cause for the default and prejudice therefrom, or that a fundamental miscarriage of justice will occur if the claim is not heard, *i.e.,* an assertion of actual innocence. *See, e.g., Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). Relatedly, an issue that does not present a federal question is simply not cognizable and exhaustion is irrelevant. *See Tillett v. Freeman*, 868 F.2d 106, 108 (3rd Cir. 1989) (reversing dismissal in order to exhaust state court remedies where exhaustion requirement cannot be applied to a claim based on state law). *See also Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) ("Fair presentation mandates that the *federal* claim 'be presented face-up and squarely'") (emphasis added). It is under this framework that Respondent addresses exhaustion, cognizability, and procedural default.

## ANALYSIS

### GROUND ONE:
### Alleged Ineffective Assistance of Counsel

Petitioner alleges counsel was ineffective in failing to preserve the issue on admissibility of evidence of collateral injuries to the small child. (ECF No. 10-1 at 5). This issue was raised and ruled upon in the PCR action, and raised on appeal. Ultimately, the Supreme Court of South Carolina found Petitioner suffered no prejudice; thus, was not entitled to any relief. (Attachment 18; *see also Rivers v. State*, 446 S.C. 1, 916 S.E.2d 335 (2025)). Being fully and properly exhausted, this ground is ripe for deferential review under 28 U.S.C. § 2254(d); however, Petitioner cannot show an unreasonable application of *Strickland* to the facts of record. Thus, he is due no relief.

In application of this standard to ineffective assistance of counsel claims for federal habeas review, Petitioner has the burden of proving that the state court's application of the two-prong *Strickland* standard was unreasonable in light of the *entire* state court record. The *Strickland* standard requires a PCR Applicant to show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). It is insufficient to prove "that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). A petitioner must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Further, it is well-settled that "the object of an ineffectiveness claim is not to grade counsel's performance," consequently, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.* at 697.

Notably, the review here is not the same as a new *Strickland* review; rather, the deferential AEDPA lens must be applied, and the state court's adjudication is reviewed for reasonableness. *Richter, supra.* Actually, *Strickland* claims reviewed in habeas are afforded *two layers of deference*: ("the standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. . . ." *Richter*, 526 U.S. at 105 (internal citation omitted)). "[I]n more concrete terms, a federal court may grant relief only if every ' "fairminded juris[t]" ' would agree that every reasonable lawyer would have made a different

decision." *Dunn v. Reeves*, 594 U.S. 731, 739–740 (2021) (quoting *Richter*, 562 U.S. at 101). And, if one prong meets this requirement, the other prong simply does not matter. *Shinn v. Kayer*, 592 U.S. 111, 120 (2020) ("if a fairminded jurist could agree with either" prong "the reasonableness of the other is 'beside the point'").

The Supreme Court of South Carolina carefully reviewed the evidence admitted as to whether it could have prejudiced Petitioner in context of the case and found it did not. That ruling is well-reasoned, supported and follows the *Strickland* instruction. Petitioner fails to show an unreasonable adjudication.

*The PCR Appeal*

In its review of the issue of whether trial counsel was ineffective for failing to properly object to the admission of collateral injury evidence, the South Carolina Supreme Court focused on the lack of prejudice to Petitioner and declined to assess whether trial counsel's performance was deficient. [5] (Attachment 18; *see also Rivers*, 926 S.E.2d at 340–41). Assessing state law and what is required for proving the offense of homicide by child abuse, the Court stated:

> As to whether excluding the collateral injury evidence would have affected the jury's verdict, we find no reasonable probability that it would have. Section 16-3-85(A)(1) of the South Carolina Code (2015) provides "A person is guilty of [HCA] if the person: (1) causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an extreme indifference to human life ...." "Extreme indifference is in the nature of 'a culpable mental state ... and therefore is akin to intent.' " . . . In proving extreme indifference, the State is not required "to prove a defendant acted with the intent to harm" but must show the "defendant performed a deliberate act that he or she knew would create a risk of death to the child." . . . .

[5] The Court also declined to review admissibility of the collateral injury evidence since "the State conceded that we need not determine whether the evidence was admissible. Thus, we do not reach whether the collateral injury evidence was admissible under Rule 404(b) of the South Carolina Rules of Evidence as *res gestae* evidence, or as Battered Child Syndrome Evidence." *Id.* at 11, 916 S.E.2d at 341.

> Our courts have found extreme indifference based on omission in extraordinary circumstances. *See State v. Thompson*, 420 S.C. 192, 208-09, 802 S.E.2d 623, 631 (Ct. App. 2017) (finding extreme indifference where a mother failed to help her child though that child was bleeding through his shirt and that a juror could reasonably infer that either parent beat Victim while the other parent was present and acquiesced in the abuse); *Jarrell*, 350 S.C. at 99, 564 S.E.2d at 367 (finding extreme indifference where a mother left her child at her residence knowing he would be killed). Even so, extreme indifference does not require extraordinary facts—only that the defendant was aware of the risk of death and disregarded it. . . .
>
> Here, Rivers testified that he found Victim unresponsive and performed CPR until the child began wheezing and regained color. Despite Victim's history of severe respiratory issues and recent hospitalization, Rivers placed Victim face down in a playpen without seeking medical assistance or informing anyone and then went outside to do yard work. When Victim stopped breathing again, Rivers—who admitted he did not know CPR—had to be guided by 911 operators in his efforts to resuscitate Victim. Victim's autopsy confirmed that Victim died of asphyxiation.
>
> Rivers' awareness of Victim's medical history, Victim's need for CPR, Rivers' inability to perform CPR, and Rivers' failure to seek assistance after Victim resumed wheezing demonstrated a conscious disregard for the risk of Victim's death. Thus, even assuming the jury accepted Rivers' version of events, his actions established extreme indifference beyond a reasonable doubt. Moreover, the jury could have found Rivers' testimony non-credible and reached an even more unfavorable conclusion as to what happened on the morning of Victim's death.
>
> Accordingly, Rivers has not demonstrated a reasonable likelihood that excluding the collateral injury evidence would have changed the jury's verdict and has failed to satisfy *Strickland's* prejudice prong.

(Attachment 18; *see also Rivers*, 916 S.E.2d at 342 (cleaned up)).

Stated differently, whether the jury ultimately believed his story or the other evidence, Petitioner was still guilty of the offense. There could be no prejudice.

The state court record fully supports the finding of no prejudice by the South Carolina Supreme Court. As such, Ground One is without merit and should be summarily dismissed.

**GROUND TWO:**
**Alleged Trial Court Error in Admitting Collateral Injury Evidence**

Petitioner raised this issue in his direct appeal; however, the Court of Appeals found the argument that the trial court had abused its discretion in admitting the collateral injury evidence was not preserved for appellate review. That an issue must be raised to and ruled upon by the trial court is a well-recognized requirement in state law, independent of any federal question.[6] *See, e.g., State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."); *Williams v. Riley,* No. CV 6:15-3236-TMC-KFM, 2016 WL 4408834, at *6 (D.S.C. July 14, 2016), *report and recommendation adopted,* No. CV 6:15-3236-TMC, 2016 WL 4386080 (D.S.C. Aug. 16, 2016) (finding the preservation doctrine "well settled in South Carolina"). Thus, resolution of the issue rested on state law, not federal law, and there is nothing to review here since federal courts will not review a disposition of an issue based only on adequate and independent state-law grounds. *Glossip v. Oklahoma*, 604 U.S. 226, 242 (2025); *see also Coleman, supra.*

Moreover, it is Petitioner's burden to show cause and prejudice, or actual innocence, to avoid the procedural default. *Carrier*, 477 U.S. at 495–96. This he cannot do. Even assuming the admission of the evidence was error, no prejudice can be attributed to Petitioner considering the other overwhelming evidence of his guilt; a ruling made on complete review of the evidence by the Supreme Court of South Carolina. (Attachment 18). However, Petitioner has not shown any

---

[6] Indeed, the Court of Appeals noted in the direct appeal that the bar was "consistently applied" and that state appellate courts do not conduct "plain error" review. (Attachment 1, PCR App. 460 n.2).

cause to excuse the default and the procedural bar should be applied without exception. As such, Ground Two is defaulted and should be summarily dismissed.

**CONCLUSION**

WHEREFORE, based on the foregoing and having made the Return, Respondent submits that Petitioner is not entitled to any relief for all the foregoing reasons, and Respondent is entitled to summary judgment in his favor as a matter of law.

Respectfully submitted,

ALAN WILSON
Attorney General

DONALD J. ZELENKA
Deputy Attorney General

MELODY J. BROWN
Senior Assistant Deputy Attorney General
Fed. I.D. No. 7979

P. SANDERS LINKER
Assistant Attorney General
Fed. I.D. No. 14635

Post Office Box 11549
Columbia, SC 29211-1549
(803) 734-0918

***s/Melody J. Brown***
By: ________________________
ATTORNEYS FOR RESPONDENT

January 5, 2026
Columbia, South Carolina